NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

In the Matter of                    :    Case No. 11-10330/JHW

Joseph A. Andris                    :

       Debtor              :    **OPINION**

APPEARANCES:  David Kasen, Esq.
Kasen & Kasen
1874 East Route 70, Suite 3
Cherry Hill, NJ 08003
Counsel for the Debtor

Karina Velter, Esq.
Weltman Weinberg
325 Chestnut Street, Ste 501
Philadelphia, PA 19106
Attorney for Third Federal Savings & Loan Association

FILED
JAMES J. WALDRON, CLERK
April 29, 2011
U.S. BANKRUPTCY COURT
CAMDEN, N.J.
BY: s/ Theresa O'Brien, Judicial
Assistant to Chief Judge Wizmur

Before the court is the motion of the debtor to enforce an agreement made and placed on the record, which resolved a motion to modify the secured claim of the second mortgagee and required the lender to discharge its lien of record upon the completion of the payments required under the Chapter 13 plan. The debtor maintains that the agreement presented to the court is binding on the parties "absent compelling circumstances," and no such circumstances have been presented. The creditor asserts that there was no meeting of the minds, and that no enforceable contract exists. For the reasons expressed below, the debtor's motion is denied.

1

**FACTS**

As a threshold matter, it is not disputed that the debtor, Joseph A. Andris, is not eligible for a Chapter 13 discharge in this case. Pursuant to 11 U.S.C. § 1328(b), a debtor may not receive a Chapter 13 discharge if he has received a Chapter 7 discharge in a case filed within the four year period prior to the order for relief. In this matter, the debtor first filed a voluntary petition for relief under Chapter 7 on March 1, 2010, case number 10-15773. He scheduled an interest in three properties, including a property located at 1147 N. 4th street, Unit 2D in Philadelphia, PA, which was not listed as his primary residence. Sovereign Bank was listed as the first mortgagee on this property and Third Federal Savings & Loan ("Third Federal") as the second mortgagee. The trustee, Andrew Sklar, abandoned the debtor's interest in real property and filed a Report of No Distribution. The debtor received a Chapter 7 discharge on June 11, 2010, and his case was closed the following June 16.

On January 6, 2011, the debtor filed the instant bankruptcy case, this time under Chapter 13. The debtor again scheduled an interest in three real properties, including the Philadelphia property. The Philadelphia property was listed with a value of $335,000, with secured claims against the property totaling $389,592.71. Sovereign Bank's claim was scheduled at $332,888.50 and Third Federal's claim was scheduled at $56,704.21. Third Federal filed a

secured proof of claim on February 9, 2011 in the amount of $56,780.62. The debtor's Chapter 13 plan was scheduled for confirmation on March 9, 2011, and subsequently adjourned to April 13, 2011, and then to May 11, 2011.

On January 6, 2011, the debtor filed a motion to fix the amount of Third Federal's claim and to discharge the second mortgage when the debtor completed payments under the plan. The debtor sought to strip down the mortgage claim of Third Federal under § 1322(b)(2) of the Code to $1719.40, based on an appraised value for the property of $335,000 and the amount of Sovereign Bank's secured claim. Because the debtor had already received a discharge of personal liability in his Chapter 7 case, the debtor argued that Third Federal had no claim as an unsecured creditor, and that therefore its lien should be discharged after the payments totaling $1719.40 were paid through the plan. The proposed form of the order stated that the mortgagee's claim would be fixed in the amount of $1719.40, and that Third Federal would be required to discharge its second mortgage when the debtor completed making his payments under the plan. On February 3, 2011, the mortgagee filed a response objecting to the motion and seeking the opportunity to conduct its own appraisal. The matter was listed for February 7, 2011, and adjourned until March 7, 2011, at the parties' request.

During the initial call of the calendar on March 7, the matter was noted as "contested" and held for the judge. While waiting for the motion to be heard, the parties discussed the matter in the hallway. Third Federal had obtained its own appraisal that valued the property at $330,000, which would have left Third Federal wholly unsecured. To avoid this result, Third Federal agreed to accept the debtor's appraised value of $335,000. Both counsel reviewed and found satisfactory the proposed order that debtor's counsel had submitted, which provided for the discharge of Third Federal's mortgage upon completion by the debtor of his Chapter 13 plan payments, including the payment of the agreed upon amount to Third Federal.

The parties then returned to the courtroom and informed the courtroom deputy that the matter was resolved. The following discussion is on the record:

| | |
|---|---|
| MR. KASEN: | On 76, Andris. |
| MR. COMPTON: | Yes. |
| MS. VELTER: | We've resolved that. |
| MR. COMPTON: | Okay. |
| MR. KASEN: | The form of order that was submitted with the motion is good for the judge to sign. |
| MR. COMPTON: | Okay. |
| MR. KASEN: | All right? |
| MS. VELTER: | Thank you. |

4

      MR. COMPTON:   It would be granted then?

      MR. KASEN:      Yes.

      MS. VELTER:     Yes.

Debtor's Motion, Exh. D.

      Mr. Kasen, counsel for the debtor, then left the courthouse to return to his office. While she was still at the courthouse, Ms. Velter, counsel for the mortgagee, spoke with a representative of her client on the phone, who apparently expressed concern that the order to be entered would require the discharge of the mortgage notwithstanding the fact that the debtor was not eligible for a Chapter 13 discharge. Counsel immediately attempted to reach Mr. Kasen to discuss this concern with him, and left a message with his office after realizing that he had left the building. She then returned to the courtroom and requested the courtroom deputy to hold the order until she could discuss her concerns with debtor's counsel. On the same day, Ms. Velter emailed the court and notified counsel for the debtor that "there was certain language missing from the order and that we could not agree to the order as written." Debtor's Motion, Exh. E. The matter was relisted for further consideration on March 9, 2011.

      The parties were unsuccessful in resolving the matter prior to their return to court. On March 9, 2011, the parties returned to court and

discussed the matter in chambers. Ms. Velter expressed concern that the provisions of the order submitted on behalf of the debtor effectively circumvented the Code by requiring the mortgagee to discharge a lien that was not otherwise entitled to be discharged under Sections 1325 and 1328. In particular, she raised concerns regarding the impact of 11 U.S.C. § 1325(a)(5)(B)(i)(I)(bb). The parties were afforded an opportunity to brief the issues, and the matter was relisted for April 13, 2011.

On March 15, 2011, the debtor filed this motion to enforce the settlement that had been placed on the record one week earlier. The debtor asserts that the parties entered into a binding settlement agreement when they stated on the record that the motion could be granted and that the original form of order could be entered. The debtor contends that settlement agreements are governed by state substantive law and that New Jersey courts would decline to vacate a settlement "absent compelling circumstances." Debtor's Brief at 2 (quoting Nolan by Nolan v. Lee Ho, 120 N.J. 465, 472, 577 A.2d 143, 146 (1990)). The debtor maintains that a settlement agreement does not require court approval to be valid as long as the record "contain[s] a sufficient factual basis for judicial enforcement of the settlement." Id. (quoting North Brunswick Residents Against High Density Hous. v. Township Council of N. Brunswick, 2007 WL 174349, at *3 (App. Div. Jan. 25, 2007)).

6

In response, Third Federal contends that there was not a meeting of the minds here, and thus, no enforceable contract exists. Ms. Velter claims that at the time of the March 7, 2011, hearing, she misunderstood a material provision of the proposed order. She did not realize that the debtor was not eligible for a Chapter 13 discharge and that the proposed order required the mortgagee to discharge its lien notwithstanding the debtor's ineligibility for a Chapter 13 discharge.[1]

## **DISCUSSION**

It is well established that a settlement agreement between parties to a lawsuit is a contract that is governed by state law. Wilcher v. City of Wilmington, 139 F.3d 366, 372 (3d Cir. 1998) (citing Pennwalt Corp. v. Plough, Inc., 676 F.2d 77, 79 (3d Cir. 1982). See also Excelsior Ins. Co. v. Pennsbury Pain Ctr., 975 F.Supp. 342, 348-49 (D.N.J. 1996); Nolan by Nolan v. Lee Ho, 120 N.J. 465, 472, 577 A.2d 143, 146 (1990); North Brunswick Residents

---

[1] In addition to this response, the mortgagee also filed an objection to confirmation of the debtor's Chapter 13 plan on March 28, 2011. Third Federal contends that the debtor's proposed plan violates section 1325(a)(5)(B)(i)(I)(bb) because it does not propose to pay the full present value of the mortgagee's claim. Third Federal claims that the plan was filed in bad faith, having been filed six months after the debtor's previous Chapter 7 discharge for the sole purpose of modifying and expunging two second mortgages. The mortgagee also points out that after reclassifying the majority of the mortgagee's claim as unsecured, the plan fails to satisfy that claim under its plan, although the plan provides for 100% payment of all unsecured claims.

Against High Density Hous. v. Township Council of N. Brunswick, 2007 WL 174349, at *3 (N.J. Super. App. Div. Jan. 25, 2007). New Jersey law ranks settlement agreements high in public policy and as a result will not vacate a settlement agreement absent a showing of fraud or other compelling circumstances. Nolan, 120 N.J. at 472, 577 A.2d at 146. The law does not differentiate between oral agreements placed on the record and those reduced to writing. Otis Elevator Co. v. Eastern Elevator Servs., Inc., 2010 WL 374820, at *4 (N.J. Super. App. Div. Feb. 4, 2010); Pascarella v. Bruck, 190 N.J. Super. 118, 126-27, 462 A.2d 186, 191 (App. Div.), certif. denied, 94 N.J. 600, 468 A.2d 233 (1983). "But like any contract, [a settlement agreement] is only 'enforceable if the parties agree on essential terms, and manifest an intention to be bound by those terms.'" Martin v. Hoveround Corp., Civ. No. 10-3970, 2011 U.S. Dist. LEXIS 18800, at *6 (D.N.J. 2011) (quoting United States v. Lightman, 988 F.Supp. 448, 458 (D.N.J. 1997)).

In a case where both parties enter into a contract based on a mistaken belief as to a material fact underlying the terms of the agreement, the contract is generally rescinded to the extent that there was no "meeting of the minds" necessary to validate the agreement. Center 48 Ltd. P'ship v. May Dep't Stores Co., 355 N.J. Super. 390, 406, 810 A.2d 610, 619 (App. Div. 2002); Aponte v. Williard, 229 N.J. Super. 490, 493, 551 A.2d 1054, 1055 (App. Div. 1989). However, "a unilateral mistake of fact, unknown to the other party, is not

8

ordinarily grounds for avoidance of a contract." Center 48, 355 N.J. Super. at 412, 810 A.2d at 623. A party seeking to rescind a contract on the basis of such unilateral mistake bears the burden of demonstrating "'special circumstances'" which justify "'a departure from the generally controlling principle that parties are bound by the contracts they make for themselves.'" Intertech Assocs. Inc. v. City of Paterson, 255 N.J. Super. 52, 59-60, 604 A.2d 628, 631 (App. Div. 1992)(quoting Cataldo Constr. Co. v. County of Essex, 110 N.J. Super. 414, 418, 265 A.2d 842, 844 (Ch. Div. 1970). These special circumstances have been described as follows:

> [1] The mistake must be of so great a consequence that it would be unconscionable to enforce the contract, [2] the matter as to which the mistake was made must relate to a material feature of the contract, [3] the mistake must have occurred notwithstanding the exercise of reasonable care by the party making it, and [4] rescission must not cause serious prejudice to the other party, except for loss of its bargain.

Center 48, 355 N.J. Super. at 412, 810 A.2d at 623 (citations omitted). For relief to be granted, all four requirements must be met. See Intertech, 255 N.J. Super. at 61, 604 A.2d at 633. In examining the circumstances presented here carefully, I believe that the mortgagee has met its burden to show special circumstances warranting relief from the agreement, and has demonstrated that the four specified requirements are established on this record.

9

1.  <u>Unconscionability</u>.

Unconscionability is an "amorphous concept obviously designed to establish a broad business ethic." <u>Kugler v. Romain,</u> 58 N.J. 522, 543, 279 A.2d 640, 651 (1971)(discussing the U.C.C.). In determining whether unconscionability exists, courts look to two factors: "(1) unfairness in the formation of the contract, and (2) excessively disproportionate terms." <u>Delta Funding Corp. v. Harris</u>, 189 N.J. 28, 55, 912 A.2d 104, 120 (2006) (quoting <u>Sitogum Holdings, Inc. v. Ropes</u>, 352 N.J. Super. 555, 564, 800 A.2d 915, 921 (Ch. Div. 2002). The first factor pertains to procedural unfairness in the formation of the contract, taking into account a variety of inadequacies, "'such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process.'" <u>Id.</u> (citations omitted). The second factor—"'excessively disproportionate terms'"—considers the substantive unfairness of the agreement. <u>Id.</u> (citations omitted). This factor requires the court to consider whether "'the exchange of obligations is so one-sided as to shock the court's conscience.'" <u>Id.</u> (citations omitted). To find unconscionability, some courts require the presence of both procedural and substantive unconscionability, while others require only substantive unconscionability. <u>Id.</u> A third set of courts use a "sliding scale" approach," wherein small degree of procedural unfairness can be made up for by a great deal of substantive

10

unfairness, and vice versa. <u>Sitogum Holdings, Inc. v. Ropes</u>, 352 N.J. Super. 555, 565-66, 800 A.2d 915, 921 (Ch. Div. 2002).

Here, both procedural and substantive unconscionability factors exist, although the factors differ from the customary circumstance of a more sophisticated, authoritative party pitted against a less sophisticated, less knowledgeable party on the other side. Here, the procedural unconscionability presented is the prospect that a quick glance at an order which caused counsel for the mortgagee to misinterpret or mistake the import of the order would serve to bind the parties to a result that would strongly favor the debtor, but is a result that the debtor may not be entitled to receive. This is particularly so in light of the immediate steps taken by counsel for the mortgagee to address the mistake. The substantive unconscionability factor is the uncertainty of the outcome of the issue presented, i.e., whether the debtor is entitled to strip off the lien without obtaining a Chapter 13 discharge. The issue of a Chapter 13 debtor's entitlement to have a lien discharged in the circumstances described, where the debtor is not eligible for a Chapter 13 personal discharge, is presently being litigated around the country with conflicting results. The unconscionability of this circumstance is the deprivation of the opportunity on the part of the mortgagee to litigate the issue on the merits.

11

2.  <u>Material Feature</u>.

There is no question that the contest between the parties about the opportunity to discharge the Third Federal mortgage in this circumstance is a material feature of the agreement. The parties agree to the extent of Third Federal's secured claim. Third Federal made a unilateral mistake regarding the ineligibility of the debtor for a Chapter 13 discharge, and the requirements for the discharge of the mortgage based on the completion of plan payments. Third Federal holds a $56,000 mortgage against the property. The conditions for the discharge of the lien are certainly material to the resolution of the issues between the parties.

3.  <u>Exercise of Reasonable Care by the Mortgagee</u>.

"'[W]hether the negligence [or failure to exercise reasonable care] of the mistaken party is of such a degree as to bar equitable relief depends in each case on the particular circumstances.'" <u>Intertech,</u> 255 N.J. Super. at 61, 604 A.2d at 633 (quoting <u>Cataldo</u>, 110 N.J. Super. at 421, 265 A.2d at 842).

The requirement that the respondent herein must have exercised reasonable care is viewed in the light of <u>Crane v. Bielski</u>, 15 N.J. 342, 104 A.2d 651 (1954), "a case in which a mortgage foreclosure sale was set aside because

12

of the mortgagor's unilateral mistake." Hamel v. Allstate Ins. Co., 233 N.J. Super. 502, 508, 559 A.2d 455, 458 (N.J. Super. Ad). In Crane, the Supreme Court addressed the issue of reasonable care in the context of unilateral mistake as follows:

> 'Mistake,' by its very definition, implies some degree of negligence. Human failing is its essence and it denotes error of judgment. However, it still remains the obligation of a court of equity to determine whether, despite such misjudgment, it would be inequitable and fundamentally unjust not to set aside the sale.

15 N.J. at 348, 104 A.2d at 655 (1954). Thus, a court must consider whether, despite a party's misjudgment or negligence, it would still be "inequitable and fundamentally unjust" not to set aside the agreement. Hamel, 233 N.J. Super. at 508, 559 A.2d at 459 (citing Crane, 15 N.J. at 348, 104 A.2d at 651).

It has been established on this record that a mistake was made in understanding the import of the form of order drafted by debtor's counsel in this matter before the settlement was placed on the record. However, the mistake was almost instantly caught. It would be grossly inequitable and fundamentally unjust to prevent the mortgagee from having its day in court on this most important and contested issue.

13

4.     No Serious Prejudice.

In considering whether rescission will result in serious injury to the other party, a court may look to whether the non-mistaken party would be in any worse position after the rescission than it would if the agreement had never been entered into. Id. at 509, 559 A.2d at 459. A party may show that they would be unfairly prejudiced by a decision to grant rescission by showing that they did something in reliance on the agreement. Id.

Indeed, by the rescission of the settlement placed on the record, the debtor loses the substantial benefit of the bargain made, i.e., the discharge of the $56,000 mortgage upon the payment of the agreed upon amount, $1,719. However, the loss of the bargain is not the type of prejudice that would prevent the rescission of the agreement. In this circumstance, the debtor is in no worse position after the rescission then he would have been if the agreement with the mortgagee had never been entered into.

## CONCLUSION

The equitable and just decision on the circumstances presented here is to allow the parties to have their positions presented fully and fairly, and to issue a decision based on the merits of each parties' position. The settlement

14

agreement placed on the record on March 7, 2011 is hereby rescinded. The motion to enforce the settlement is denied.

The confirmation hearing now scheduled for May 11, 2011 will be adjourned to June 8, 2011 at 2:00 P.M. The mortgagee shall submit a brief in support of its position by May 11, and the debtor may submit a response through May 25. The matter will be considered in court on **Wednesday, June 8, 2011 at 2:00 p.m.**

Dated:  April 29, 2011

JUDITH H. WIZMUR
CHIEF JUDGE
U.S. BANKRUPTCY COURT